17-1214 in Re Estate behind us, Rivera. Okay, can the attorneys at Rivera approach the podium please and identify yourselves for the record. Linda Kagan for the appellants, Martin Rivera and all of his children, excluding Jazlyn Rivera. Good morning Ms. Kagan. How many, how much time did you want to reserve? 15 and 5. 5 for Rivera? Great. Alright. Good morning, Paul Franciskowitz on behalf of Jennifer Vega, who is the guardian of the person. Celeste Kralovic on behalf of the Northern Trust, guardian of the estate. Could you stand on the podium for me, please? Good morning. Alright, who's arguing? I'm going to argue, Judge. I'm going to use the full 20 minutes. 15. 15, Judge. Oh, don't try to sneak that extra time in there, sir. There's a lot of questions, of course, we're going to let you finish your argument. And then Ms. Kralovic, if there's something very specific to the Northern Trust brief, she's available to answer any questions. Great, thank you. Okay, Ms. Kagan, you can proceed. Thank you. So you know you get 15, your 5 is in there. Is that what you? Yeah. 15 minutes plus 5 for rebuttal? No, it'll be 10 for your initial argument, 5 for rebuttal. I just wanted to make sure it was the same. Yes, it's going to be the same, but if you have a lot of questions, of course, we'll give you extra time. I appreciate that. Thank you. There's no room in the law for the result that was reached here. The disinheritance of Martin Rivera and all of his progeny except for Jazlyn, based on a statute which did not permit it, using the wrong guardian to influence who should benefit from Inez's trust, using a woefully insufficient burden of proof to decide it. What's the standard of review in the trial court's findings? Well, this case presents legal issues, and some of the standards of review are de novo. There's her findings, the factual findings that she made regarding whether Martin and the myriad of children, what their contact was with Inez. What is that standard? Well, the factual findings would be reviewed on abuse of discretion. Right. And we also assert that the court based its decision using evidence which would have been irrelevant during Inez's minority to support the decision. Reversals required here no matter whether your honors agree that all, some, or only one of these wrongs were committed. When you say that the wrong period of time was used, are you suggesting that her years growing up aren't relevant? What did you mean by that? Well, I'm suggesting that when Inez was a minor, she could not have an estate, and if she had died during her minority, her estate would have passed automatically by the laws of intestacy. So you're saying then, therefore, that period of her life is no longer relevant at all? To a certain extent, yes. I am saying that. What would you base that on? A case or something? Well. Your feelings? No. Not my feelings. No. Okay. What happened here was that Inez had a trust that was established during her majority in March of 2015, and then this court decided a case called In re Howell in June of 2015, and following that decision, the Northern Trust Company ran with the decision and filed a petition in March of 2016, quote-unquote, for further direction regarding estate planning. Our position is that Inez had a trust. It was created. And the statute governing trust of disabled persons is very specific about what the court can do when a trust has been established and what the court cannot do in order to amend a trust. And our position is that the language of the statute says that a trust can only be amended, and what the Northern Trust was seeking was to amend the trust to disinherit Martin Rivera, that a trust can only be amended as the court may deem advisable in light of changes in tax laws. And the Northern Trust petition had nothing to do with changes in tax laws. That was rejected, wasn't it? It was never... The position about tax laws in Howell, didn't we specifically reject that position? Not in Howell. Not the... No, it wasn't addressed. Not in Howell? Howell had nothing to do with tax laws. Howell had... Your interpretation, I believe, was... Well, I... You actually argued in part of that decision, but whatever. Well, I think perhaps the court is remembering the McCallot case. It was certainly decided against the position you're arguing now. In the McCallot case, but the Howell case does not mention the McCallot case in any way. But your position has been rejected in the Howell case. But the McCallot case is totally distinguishable from this case. The McCallot case had to do with financial exploitation of an elderly person who was being fleeced by her neighbors, and courts would bend over backwards to assist victims of financial abuse. This case involves disinheriting blood relatives, and there's nowhere in any of the 11 subparts of the statute that talks about what you need to do to disinherit a blood relative who has already been included as a beneficiary of a trust. It's just not stated in the statute. No, but you're not really suggesting, are you, for even a moment, that a blood relative couldn't be disinherited by an individual based upon their decision not to provide for that individual for reasons that could be of any kind? I am suggesting that according to this statute, if the blood relative has already been named as a beneficiary, this statute does not provide a mechanism for disinheriting because that is an amendment or a modification of the trust. And I don't think this court can expand that. So you're saying that the trust can never be modified to disinherit a blood relative. Let's say the blood relative murdered people in the family, then they still could not be disinherited under this theory that you're proposing. Under the Slayer statute, there might be some relief, but not... So this statute precludes any, no matter what the circumstances, it absolutely precludes him from being disinherited under this estate. Yes, because if the legislature had intended that a disabled person could disinherit somebody who has already been named as a beneficiary, it would have said so clearly in the provision, the subsection 11, about amending... I don't think that argument defies common sense at all. I don't think this position is at all out of bounds. I think it is a reasonable interpretation of this statute and that the question has never been addressed before. This came on the heels, this case came on the heels of Howell. Howell involved the creation... Let me just put this out so we all understand exactly what you're advocating. You are advocating that a man who has had nothing to do with a disabled child for her entire life, has had, at my count, ten children by four different women, beat the mother of the disabled child severely enough that she had a stillborn child. You're advocating that this man, under any circumstances, cannot be disinherited from this disabled child's estate no matter that he has had no contact with her, no significant contact with her. I believe this statute precludes such activity. It is not clearly stated in this statute. The statute is very detailed about what a guardian of this estate can and cannot do. The disabled children are also entitled, under the same illogical theory that you have there, all equally entitled to her estate. Well, there's no distinction in the law between half-siblings and full-siblings, so yes, they are entitled. Would that be a fair and just result? Well, it certainly is contrary to the statute to let this occur. Why would you create a trust but you could never amend it? What theory, what case, what law would you suggest supports your position that a trust may be created but it can never be changed? It can be changed as long as the amendment or modification is done as the court may consider advisable in light of changes in applicable tax laws. I didn't write the statute. No, we're back at your position that you agreed and conceded yourself this morning that it was rejected in McCulloch. It was rejected in McCulloch, but I don't think this court has to follow McCulloch. I don't think McCulloch has anything remotely to do with the circumstances here. That was a financial exploitation case of an elderly person, not an attempt to disinherit one relative. Is there a tinge of exploitation at all here? No. I mean, you're saying that it's okay that if there's an exploitation, then the tax consequences don't matter or they're the, I'm sorry, that they have to be present, but if it's anything else, no. This is what the legislature, there has to be some meaning. Can you tell us what the McCulloch court said when they rejected your position about that this is not based upon changes or taxation? McCulloch really does not mean that a trust can be amended for any reason. So I didn't ask you that question. I asked you, tell me what the reasoning was in that case when they rejected what you're arguing to us now. So that we can, if we agree with you and we want to write this, tell us how we should reject that case and the reasoning they used. Well, I don't believe that McCulloch was thoroughly explored in terms of the phrase, as the court may deem advisable in light of changes in the tax laws. They glossed over that. I believe that that phrase is a limitation on the court's power. If the legislature wants to expand the court's power to approve an amendment to a trust that has nothing to do with changes in the tax laws, that is a job for the legislature to do and not for the courts. Has the legislature amended these statutes since the McCulloch case? Not that I know of. No. And I believe that this court can amend it. And they amended it since McCulloch. I don't believe so. Are you sure? In terms of the 11 subparts of what the court can and cannot do? I mean, in light of McCulloch, you're saying there's never been any amendments at all? Since 2010. Because when there's a case that's decided and there's something, you know, that's not the intent of the legislature, they can go back in, amend it any time they want, and then they let us know they didn't agree with our interpretation. Is that correct? When the legislature has a statute in place, and not that we're the Illinois Supreme Court, but if the Illinois Supreme Court or an appellate court would choose to interpret a statute a certain way and it was erroneous or wrong, the legislature has the power to correct it. Yes, but the legislature doesn't act immediately. Oh, but how long is that McCulloch case? McCulloch was decided in 2010. Howell was decided in 2015. I'm not talking about Howell now. I know. I'm talking about McCulloch. I know. That rejected the position you're saying, your interpretation of the statute. Even if my interpretation of the statute is incorrect, in a case such as this, and I'm not conceiving that it is, in a case such as this one, the incorrect burden of proof was used. We're talking about disinheriting a blood relative. This is not a garden variety financial dispute where preponderance of the evidence standard is correct to be used. Well, the legislature certainly knows how to do that when they want to, don't they? Like, in order to have a sterilization, there has to be clear and convincing evidence that it's in the best interest. Isn't that right? For sterilization? Yes. For other things as well. For a person who needs a divorce. Isn't the burden of proof clear and convincing? And I'm saying that preponderance of the evidence was an insufficient burden and that the standard should be clear and convincing. My question is that actually when the legislature wants a standard to be used, they know full well how to incorporate it into the statute so that if there were a directive to us that the standard that the trial judge used here was incorrect. They could easily have included this in the statute, couldn't they? They could have, but there are statutes which don't explicitly state what a burden of proof is. Yes, but you're asking us to impose a burden of proof that the legislature did not state. It's not in the statute, is it? It's not in the statute. I agree with you. How are we reviewing the trial court's decision in this case to use the preponderance of the evidence standard? An issue regarding the burden of proof is reviewed de novo. It's a legal question. It's one of the things that we want to get from you. Yes, it's reviewed de novo, so you have to look at this with fresh eyes. And the burden of proof issue is central to this case. We're talking about a fundamental relationship between a parent and a child being severed, which is the same thing as a termination of parental rights, which the United States Supreme Court has said must be viewed in the context of clear and convincing evidence. You're aware, though, aren't you, of cases sometimes where the trial judge may have used a preponderance standard. The court of review is asked to consider perhaps a case where there's not been a decision on what the standard is. And the court on review may say, well, even if the court had applied a clear and convincing standard, we would uphold the decision of the trial court after a full-blown evidentiary hearing. I'm asking the court to remand this case for a new hearing where the correct burden of proof could be applied because perhaps the case would be tried differently. What do you think would be different? I don't want to speculate on how it would be tried differently. Why don't you tell us what the judge used? What were the factors? What was the testimony? What were the things that she relied on when she reached her decision? She relied on a litany of what I call in quotes the bad-dad testimony. All right. I know. I think it's clear what she relied on. Plus she relied on, as an important factor, Martin's lack of visitation, even though there were disputes about visitation during Inez's minority, and after she became 18 years old, he had no legal right to visit. Yet she would not permit visitation during Inez's majority because she didn't want to give a leg up to Martin and his children so that they could have a relationship and perhaps even establish. Doesn't the record sort of suggest that there was one incident in 2010 when he tried to meet her at a mall and that both sides had conflicting testimony? Yes, yes. Who decides that? A reviewing court or a trial judge? The trial judge decides an issue of fact like that. Is there something, though, about the record that maybe suggests that the trial judge was correct? Because forgetting about the we're talking about five years now that you think would be relevant from when she was 18 until she was 23, correct? Right. But was there a fair suggestion in the record? Probably. I don't know. A strong suggestion that from the time that she was born until she was 18 that there was virtually no real contact? The record is the facts of this case certainly don't indicate that Mr. Rivera was a hands-on involved father. But that implicates the question of what does it mean to be a blood relative? Because if this decision is allowed to stand, then you have to be white in order to be a blood relative. And that's not the law in this state. You're suggesting that the only standard there is is blood relative. A disabled adult really doesn't have the same rights as another individual. No, that's not what I'm suggesting. But the statute says that the court has to consider who are the natural objects of the disabled person's bounty. And that has been defined by the Illinois Supreme Court in DeHart v. DeHart to mean people who are related to Inez by ties of blood or affection. Right. So it doesn't mean... It could be related by ties of affection. Yes, but it doesn't mean that you have to be related by ties of affection. You can be related by blood. Sure, but it could be either one of those, can't it? It could be either one, but it doesn't have to be both. Right, so it doesn't have to be both. It doesn't have to be a blood relative, does it? No. It can be a person who is light. But if you are a blood relative and not light, that changes the definition of being a blood relative. It makes being a blood relative meaningless. And that's what I think happened here. It kind of just boils down to that nobody liked. It had nothing to do with anything other than nobody likes. I think this case was a misapplication at the outset of a statute that did not permit, should not have gone forward in the way that it did go forward, and that the wrong burden of proof was used in the hearing. And that it was ceded to her. Pardon me? The whole decision was ceded to Jennifer. Well, the Northern Trust conceded that as a corporate estate guardian, they didn't know who should benefit, but it's their job to do the estate planning. Yet they relied on Jennifer, who clearly has an interest in the matter. Did the guardian not like him testifying for her? He did, and it was appropriate that he testified. And his testimony essentially supported the testimony of Jennifer and Jazlyn in terms of the relationship. Although even Mr. Schmiedl conceded that he didn't know if Inez knew who he was or had any cognitive way to express that she remembered him from his prior visits. There was an indication, though, that Inez has an indication of the family members that surround her every day. It appears as though she's able to cry and smile, not talk. No, we don't. Okay, all right. But I think this is a paradox presented by this case. You know, Jennifer held the keys to the visits after Inez's majority. Is there anything in the law that suggests that's not correct? No, there isn't. Did the judge rule against Mr. Schmiedl? Yes, he did, and nobody has challenged the holding and struck versus Crook County Public Guardian. But that's what the law is in this state, that an adult person does not have standing to visit his disabled ward daughter. There's no standing to challenge it. She holds the keys. And the judge was not going to give him any openings to try and reestablish a relationship. So his hands were tied. Well, his attempts to reestablish the relationship didn't exist until there was a modification to the state. Is that correct? I'm sorry. He didn't attempt to reestablish any relationship with her until the probate estate was being modified. And then he came flying into court, right? Yes, and his testimony was he had made attempts in the past, and he was rebuffed, and they wouldn't answer the door at the gated community where they lived, and he got frustrated. So what was his testimony about the stillborn? Well, he denied that he caused the stillbirth. The thing he talked about was at a different point in time, was it? Well, that they had an altercation and they went outside and she slipped. Pardon me? He testified he defended himself. Was that the same incident? It might have been a different incident. I don't know. But he did say that they then went to a shelter. The mother?  Two children? Yes. Inez and Jaslyn and the mother went to a shelter. There's no question that there was a history of domestic violence between these parties. But as it related directly to Inez, there was never any evidence. So are you saying that the law doesn't really recognize the objects of one's bounty could exclude someone who has committed domestic violence by way of physical, mental, emotional abuse? What I'm saying is this statute explicitly limits modifications of previously existing trusts to circumstances when the modification is sought in light of changes in the tax laws. Okay. It's all about tax laws. It's all about does the statute permit the requested modification that the court approved. And for these, how am I doing on time? Now would be a good time to wrap up. Okay. I think I've covered the main points. So for these reasons, we're asking the court to reverse the decision of the trial court, vacate the amendment to the trust which disinherited Martin and his children, and remand the case for further proceedings that would be consistent with the court's order. Thank you. Thank you. Mr. Francis Kollwitz. Why don't you start with this interpretation, Ms. Kagan says. That's wrong. First of all, her interpretation of even the statute isn't even applicable in our case. If you go to Section 11, it's modifying by means of codicil or trust amendment the terms of the ward's will or any revocable trust created by the ward. The estate plan wasn't created by the ward. It wasn't during her time before her finding of disability. It was actually drafted by the Northern Trust of Guardian. What this section referred to is actually if I myself had an estate plan, then I became disabled, and should there be some deference to something that I did while I was still competent. So the statute refers to that. So first of all, 11 doesn't even apply to our case. Did you argue that? I didn't. You did not? I did not. No, because you're doing something for the first time. That's correct, Judge. I read the statute. Okay. And you didn't ask for settlement. I didn't. And Ms. Kagan has been here arguing her case quite vehemently, and now you're switching and suggesting that the statute doesn't even apply. But even if it did, even if it did, I didn't realize that. I want to hear your argument, but I don't think it's fair to your opponent to argue it now because we don't have a motion to supplement. You certainly can do that. Ms. Kagan can file an objection if she chooses or what have you. But I don't think it's appropriate to use a new argument right now. What I would say to the court, Your Honor, is that if we look at the statute, the statute actually has language when it starts that says actions or applications, and I'm referring to either a petition or some other thing done here, shall not be limited to the following. So one through however many are listed in the Probate Act of things to do is a suggestion. It is not an all-encompassing list of things that you're able to do. So these are some of the items that a guardian can do, but it's not limited. The initial act case clearly stated that a guardian could go ahead and amend an existing estate plan. That has been upheld on appeal, and in the last eight years, even though the Probate Act has been amended many times, and as you reflect, twice to add in clear and convincing language, this statute hasn't been amended to reflect that, in fact, you can't do that. The Howell case, which was only a few years ago, again came up with the exact same argument. In fact, they also said in that case that the court should be... Tell me what I said. Yes. You said the court should be less inclined to approve the creation of a new estate plan or the replacement of an estate plan case. However, it appears his disabilities are permanent and forever would prevent him from engaging. What the court said is that because the person is under disability and won't be able to make a change, you should be able to also make amendments with respect to existing estate plans, not just the creation of new ones. And that was Howell's language in the appeal that said that Section 11 is not limited to taxes only. Even if you read the statute itself... It was in there. It was in there, Judge. You were correct. So we have two cases in our district both indicating that this is appropriate. With respect to the issue of taxes, if we look in the statute, the statute itself says the ward's wishes, as best as they can be ascertained, shall be carried out whether or not tax savings are involved. Because the point being is that we want to be able, as a guardian, to do anything that the ward could have done. The ward should have every right that all of us have to have their actions taken care of, their wishes done, and this statute is not limited to just what's put in here. Okay. As far as the ability to do this, Your Honor, we'd say that based on the interpretation of the statute, which says including but not limited, as long as we are also looking at both Michalak and Howell both allow the amendment of trust, we think that it was appropriate within the discretion of the court to do. As for the argument that this was done at the direction of the guardian of the person, that's actually not correct. The guardian of the estate was the one who filed the petition with the court to ask to do estate planning. The guardian of the estate was the one who retained council to represent themselves and the estate planner. The guardian of the estate drafted the estate plan consistent with the court's findings. The guardian of the estate presented a motion to file that trust amendment with the court. The guardians of the estate are the ones who executed the estate plan. The guardian of the person participated in the process of the hearing as did the father. The father had counsel, the father appeared, the father had notice. All of the heirs of the case had notice. The father was allowed to present evidence. He cross-examined all of our witnesses. He presented his own evidence. He filed close trial motions. How many of the other siblings by other mothers appeared and testified? One other parent testified. One other child testified. And then the father testified. And what about counsel's argument that any of her life before 20-whatever, what year was it? 2013? Yeah. When did she turn? 2013 is when the guardianship was opened. What about counsel's suggestion that that should basically be erased? It's as if it didn't exist. Did the court err when she was listening to testimony that was presented, I think, by both sides about the things that the father did in relation to her life, you know, learning how to care for her, all those things? Should all that then be erased because counsel said the court shouldn't consider it? Of course not. And at the trial level, which would be the appropriate time to bring those evidentiary objections, that was never brought. That was never objected to on any close trial motions. And the first time it was ever brought. Well, that's not in the briefs either. It's not in the briefs either. You had a new one and Ms. Kagan had a new one. I don't recall reading that in her brief, that everything that was testified to before she turned 18 was something the court should have never looked at. Okay. There's no case for that. There's nothing in the statutes for that. And common sense would say that's not correct. If I myself was going to do an estate plan for myself, I certainly would look over my entire lifetime, not the last five years, to determine what I thought I wanted to leave people to. Well, I would think that the objects of one's bounty is something that would depend on maybe your whole life, your whole existence as opposed to when you turned 18. It should. It should. I mean, or it could. I think that's what the law clearly suggests. I would agree with you, Your Honor. I think that to limit the evidence, which wasn't limited at trial, and Martin was able to present evidence from the beginning in his case in chief, I think it provides context for what this ward would have wanted over an entire lifetime. This is how she was treated. This is who her family members are. These are the people who took care of her. That gives the court an opportunity to take a look at somebody's life and see who would they want to take care of, as opposed to what happened in the last two to five years, which still, within our last five years, I don't believe the facts would be any different. I don't believe the ruling would be any different over the last five years. But there certainly wasn't any limitation in the trial, and I would say that everything should have been looked at. Well, in 2010, was she under 18 then? She was under 18, yes. And there was no petition in the court at any time to make certain that there could be visitation. Isn't that correct? There was a petition filed in the Domestic Relations Act. There was. Yeah, but what happened with that? It was granted, and she allowed the visitation per the record, and it didn't go forward, and Martin never followed up for the next three years to see his child and never filed any type of motion to try to compel visitation. So there was no petition to compel because somehow visitation had been blocked. No, there had never been any motion to follow up on that because, in our opinion, what the record demonstrates and what the court indicated in her findings was is that he did not participate in that visit, and the creditor was. . . There was no testimony. Correct me if I'm wrong. The only testimony in the record regarding the visitation during this time frame was one trip to a mall in 2010. There was nothing before that, and there was no visits at the mall after that that were ever suggested to be blocked in this case. Correct. That is correct, Judge. And the court, in making its findings, listened to credibility of witnesses and believed the guardian of the person. I guess the final argument, Your Honor, that was made was that whether or not the evidence. . . I think their brief indicated a standard. I think the standard is whether or not a reasonable person could see the facts, whether it was logical. I think the facts are overwhelming, Your Honor, that there are certain people that are involved in this woman's life, certain people who take care of her and love her. She has siblings who are there every day with her. She has another sibling who comes and visits. And she has a mother who has done everything since she was 13 years old, trying to take care of a disabled kid in shelters and moving from home to home. When you take a look at those facts that are presented and who had done all of this extraordinary medical care, then who hasn't? Who doesn't visit this girl? Who's never had her for an overnight? Who's never shown her the love and affection? The court was reasonable in its discretion to determine that an escape plan would disinherit her father and other siblings who have never met her. And I think it's reasonable for this court to uphold the decision of the lower court. Thank you, Mr. Blackworth. Thank you. Ms. Fagan? Shortly after the court's decision in Howell, which came down in June of 2015, the Northern Trust met with Jennifer to inform her that because of the Howell decision, maybe it was possible to disinherit Martin. This was not something that entered into Jennifer's mind. It was suggested by the Northern Trust because they believed that the court's decision in Howell gave them an opening to amend the trust because of what happened in Howell. And our argument in the briefs was that Howell should be limited to the creation of a trust, not to the amendment of a trust. So they met with Jennifer and asked her who should benefit from this estate. And she told them. And everybody got to testify, and the court made its factual findings, and so on and so forth. But I think the statute does not provide such an opening, even though the statute says including but not limited to. This is a monumental change in an estate plan. It's one thing going in for the creation of an estate plan to consider who was most active in her life, but that estate plan was created after her majority in March of 2015. It was created and he was included. Because it couldn't have been created before her majority. That's true, but she was born in 1995, so she became 18 before 2015. She was 20 when her estate plan was created. And it wasn't until the Howell case that the court held that it might be possible to disinherit blood relatives when considering the creation of an estate plan, and that happened in June of 2015. And there was no appeal on that case, was there, on the Howell case? As far as I know, but the case was remanded to the trial court. We don't know what happened after that. This court remanded the case and did not suggest that on remand certain evidence should be given more weight than other evidence, yet at the probate bar, and I'm sure Mr. Francisco could speak to this, they have Howell hearings now to determine in disabled persons' estates who should be included in the estate plan. That's what they call them. They call them Howell hearings, but I'm suggesting that Howell hearings have to be limited to the creation. Well, you're suggesting it was wrongly decided, aren't you? Don't you say that in your brief? I don't take any offense. Well, I think that the Howell case should be limited to, I didn't ask that it be, they did not ask that it be overturned. I argue that it should be limited to its particular circumstances. It is true that in the particular McHowell case, the court ruled that the permissive language of the statute permits a guardian to amend an estate plan for a non-tax reason, but that case did not concern disinheriting blood relatives. As I mentioned before, that was a financial exploitation case. And you think that's a big difference? I do think it's a big difference. Interpreting it one way, just supply, only because of the factual underpinnings? Yes. So if the court doesn't have any other questions, and I think I've stated my case in our opening brief and in the reply brief. Thank you. Again, I'm asking for a reversal. Thank you. Thank you. We'll take a matter under advisement and issue an order as soon as possible.